REDMANN, Chief Judge.
Plaintiff appeals from a judgment dismissing her medical malpractice suit on the basis of jury interrogatories.
We affirm on our independent review of the record, Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975). We are obliged to make that independent review because the wording of the special interrogatories to the jury asked only whether defendant physician lacked the appropriate knowledge and skill, and not whether he failed to exercise it. The jury’s negative answer to that question simply does not justify a judgment for defendant. A knowledgeable and skilled surgeon might by mistake fail to exercise his or her skill and thereby injure a patient and be liable. The trial judge did not (as perhaps he could, under then La.C.C.P. 1811) himself make factual findings or simply decide the case, but instead accepted the jury’s finding as determinative.
Our review of the entire record persuades us that plaintiff did not prove, as more probable than not, that, during the course of the uterine suspension operation that defendant performed on plaintiff, defendant caused plaintiff to lose the function of her left kidney, by ligating or otherwise damaging her left ureter as plaintiff argues. The testimony of Dr. Schlegel, for 23 years head of urology at Tulane Medical Center, is persuasive that the increased urinary pressure from ureteral damage would have caused the kidney to balloon, and that the passage of several years, as occurred here prior to discovery of the kidney’s small size, would not have resulted in shrinkage of the kidney had such ballooning occurred. The testimony of plaintiff’s urologist, Dr. Jaramillo, was thoroughly logical in itself, and if its factual suppositions were supported by the record we would be inclined to agree that, by whatever process, plaintiff’s kidney was somehow injured during the operation. But Dr. Jaramillo’s expert opinion was based upon the factual suppositions that a normal young woman without previous kidney problems experienced constant “excruciating” left flank pain following uterine suspension and later was found to have suffered death of the left kidney. From those factual suppositions he would deem the pain an indication that the later-discovered urinary system damage occurred during the operation and, we repeat, that would appear a quite logical conclusion. But those factual suppositions are not justified by the evidence. Defendant’s records show that plaintiff had been treated with antibiotics for urinary tract infections three times by defendant. Moreover, the expert testimony consistently characterized as very severe the pain that would have resulted from a kidney distended by a blocked or partially blocked ureter, while hospital records do not indicate any extraordinary postoperative pain; and the experts would ex *389 pect high fever in such a case, and plaintiff did not experience a high fever. Even the lay testimony of plaintiff’s mother and then husband would not support a finding of very severe pain. (Perhaps the most notable instance was plaintiff’s testimony that because of pain she could not have gotten out of bed to go from her mother’s home to defendant’s office on December 27 as his records show she did. That testimony by plaintiff was unsupported by her mother’s testimony that plaintiff had then said she was going to the doctor’s office, but the mother didn’t know whether or not she had in fact gone.)
We conclude that the preponderance of the factual evidence and expert testimony favors the conclusion that the operation that defendant performed did not cause plaintiff the loss of function of a kidney.
We do not rule on plaintiff’s argument that the testimony of Drs. Bohm and Brad-burn should have been excluded for failure to give their names to plaintiff by supplement to answers to interrogatories. We share plaintiff’s chagrin, in a case like this, over defendant’s not naming two of his experts (including a doctor who assisted in the allegedly damaging surgery) until a week before trial. It is perhaps a close question whether those two experts should have been allowed to testify. But we disregard their testimony, as not essential to our view of this case, which is simply that Dr. Sehlegel’s testimony seems more completely reasoned independent of factual circumstances such as prior freedom of urinary tract infections and post-operative severe pain and high fever, while Dr. Jaramillo’s testimony, thoroughly logical in itself, relies on plaintiff’s recital of her history as including those circumstances (which we deem not proven to be present).
Plaintiff attacks Dr. Schlegel’s credibility because, having been plaintiff’s physician and not merely an expert employed for litigation, Dr. Schlegel later revealed his findings and opinion by letter to defendant. Plaintiff argues that that letter violated law and medical ethics and demonstrates a bias against plaintiff. We disagree. La. R.S. 13:3734 implies plaintiff’s consent to disclosure, at trial or during discovery, of relevant but otherwise confidential communications by plaintiff to a physician. In view of the availability of the letter’s information by discovery procedure we cannot conclude that its informal revelation by the letter affects Dr. Schlegel’s credibility.
Affirmed.